RECEIVED CLERK
**FILED**

· 2004 DEC 21  ⊃ 5: 34

U.S. DISTRICT COURT
DISTRICT OF UTAH

Jonathan W. Emord (pro hac)
Andrea G. Ferrenz (pro hac)
Karl M. Nobert (pro hac)
Emord & Associates, P.C.
1800 Alexander Bell Drive, Suite 200
Reston VA 20191
Phone: (202) 466-6937
Fax: (202) 466-6938

Peggy A. Tomsic (3879)
Berman, Tomsic & Savage
50 South Main Street, Suite 1250
Salt Lake City, UT 84144
Phone: (801) 328-2200

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NUTRACEUTICAL CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 2:04CV00409 TC |
| v. ) | |
| ) | |
| LESTER CRAWFORD, DVM, Acting ) | |
| Commissioner of the U.S. Food and Drug ) | |
| Administration, et al., ) | |
| ) | |
| Defendants. ) | |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION AND REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT



**TABLE OF CONTENTS**

I.      SUMMARY ............................................................................................ xi

II.     RESPONSE TO DEFENDANTS' STATEMENT
        OF UNCONTESTED MATERIAL FACTS .................................... xiv

III.    THE FINAL RULE VIOLATES 21 U.S.C. §342(f)............................1

        A.   THE FINAL RULE GIVES NO MEANING TO THE
             STATUTORY TERMS "CONDITIONS OF USE
             RECOMMENDED OR SUGGESTED IN LABELING"
             AND "SIGNIFICANT," THUS VIOLATING THE CANONS OF
             STATUTORY CONSTRUCTION ...........................................1

             1.   THE "RISK/BENEFIT" TEST OMITS "CONDITIONS
                  OF USE RECOMMENDED OR SUGGESTED IN
                  LABELING" .........................................................3

             2.   THE "RISK/BENEFIT" TEST OMITS "SIGNIFICANT"
                  RISK........................................................................3

        B.   THE FINAL RULE FAILS TO ESTABLISH, BY A
             PREPONDERANCE OF THE EVIDENCE, A SIGNIFICANT OR
             UNREASONABLE RISK OF ILLNESS OR INJURY UNDER
             *EVERY* CONDITION OF USE...............................................5

        C.   NO SOUND SCIENTIFIC EVIDENCE SUPPORTS THE
             CONCLUSION THAT EPHEDRINE ALKALOIDS AT 10 MGS
             OR LESS PRESENT ANY SIGNIFICANT OR UNREASONABLE
             RISK OF ILLNESS OR INJURY .........................................16

IV.     THE DEFENDANTS' "RISK/BENEFIT" TEST IS NOT A PERMISSIBLE
        CONSTRUCTION OF THE DIETARY SUPPLEMENT ADULTERATION
        PROVISION; THE INTERPRETATION IS UNREASONABLE,
        ARBITRARY AND CAPRICIOUS .................................................20

V.      THE FINAL RULE FLOUTS THE WILL OF CONGRESS BY NOT
        READING THE DIETARY SUPPLEMENT ADULTERATION
        PROVISION IN HARMONY WITH THE FOOD ADULTERATION
        PROVISION ................................................................................25

VI.     THE FINAL RULE IS ARBITRARY AND CAPRICIOUS IN
        VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT .............27

VII.    THE FINAL RULE VIOLATES THE APA NOTICE AND
        COMMENT RULEMAKING REQUIREMENT............................................28

VIII.   PLAINTIFFS VOLUNTARILY DISMISS THEIR TAKINGS CAUSE
        OF ACTION WITHOUT PREJUDICE .............................................................34

IX.     CONCLUSION ...................................................................................................35

## TABLE OF AUTHORITIES

### FEDERAL CASES

Addington v. Texas, 441 U.S. 418, 432 (1979 .......................................................................7

AFL-CIO v. Donovan, 757 F.2d 330 (D.C. Cir. 1985).........................................................32

Air Transp. Ass'n of America v. FAA, 169 F.3d 1 (D.C. Cir. 1999) ................................31

Aluminum Co. of America v. Bonneville Power Admin., 891 F.2d 748 (9th Cir. 1989) ...3

Anderson vs. Liberty Lobby, 447 U.S. 242, 250 (1986) .................................................. xiv

Anderson v. Butz, 550 F.2d 459 (9th Cir. 1977) .................................................................33

BATF v. FLRA, 464 U.S. 89(1983) ...............................................................................2, 5

Boise Cascade Corp. v. EPA,
    942 F.2d 1427 (9th Cir. 1991) ..............................................................................3

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................................1

Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984) ....................................................................................... passim

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) ....................15, 28

Demarest v. Manspeaker, 498 U.S. 184 (1991) ..................................................................2

Department of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F.Supp.
    1123 (E.D.Ca. 2000) ..............................................................................................5

Duncan v. Walker, 533 U.S. 167 (2001)..............................................................................2

Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469(1992) .........................................2

FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000) ............................2, 12

First Bancorporation v. Board of Governors of the Federal Reserve System,
    728 F.2d 434 (10th Cir. 1984) .............................................................................32

Flemming v. Florida Citrus Exchange, 358 U.S. 153 (1958) ...........................................20

Garcia v. United States, 469 U.S. 70 (1984) ...................................................................5

Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076 (9th Cir. 1999)....................................5

In re Winship, 397 U.S. 358 (1970) ................................................................................7

INS v. Cardoza-Fonseca, 480 U.S. 421 (1987)...................................................................7

Jerri's Ceramic Arts Inc. v. CPSC,
      874 F.2d 205 (4th Cir. 1989) .................................................................................33

K Mart Corp. v. Cartier, Inc., 486 U.S. 281 (1988)...........................................................2

Knutzen v. Eben Ezer Lutheran House. Ctr., 815 F.2d 1343 (10th Cir. 1987).................33

Lewis-Mota v. Secretary of Labor, 469 F.2d 478 (2nd Cir. 1972) ...................................33

Mayburg v. Secretary of HHS, 740 F.2d 100 (1st Cir. 1984) ............................................2

MCI Telecommunications Corp. v. FCC, 57 F.3d 1136 (D.C. Cir. 1995) .......................30

Millet, Pit, and Seed Co., Inc. v. United States, 436 F.Supp.84, (E.D. Tenn. 1977) 6, 16, 20

Mission Group Kansas, Inc. v. Riley, 146 F.3d 775 (10th Cir. 1998) ..........................2, 32

Motor Vehicle Manufacturer's Ass'n v. State Farm Mutual Automobile Ins. Co.,
      463 U.S. 19 (1983) ................................................................................24, 27, 28

Nat'l Ass'n of Greeting Card Publishers v. U.S.P.S., 462 U.S. 810 (1982) .....................5

National Cable Television Association v. FCC,
      747 F.2d 1503 (D.C. Cir. 1984) ...........................................................................32

Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan,
      298 U.S. App. D.C. 288 (D.D.C. 1992).................................................................32

Natural Resources Defense Council v. EPA,
      279 F.3d 1180 (9th Cir. 2002) ..............................................................................30

Pactra Industries v. CPSC, 555 F.2d 677 (9th Cir. 1977) ................................................12

Pearson v. Shalala, 164 F.3d. 650 (D.C.Cir. 1999)..........................................................27

Pharmanex v. Shalala, 221 F.3d 1151 (10th Cir. 2000) ............................................2, 5, 12

Pickus v. United States Board of Parole, 507 F.2d 1107 (D.C. Cir. 1974) ......................32

Public Citizen v. Heckler, 653 F.Supp. 1229 (D.D.C. 1986) ...........................................17

Rocky Mountain Helicopters, Inc. v. FAA., 971 F.2d 544
    (10th Cir. 1996) ........................................................................................33

Sargent v. Block, 576 F. Supp. 882 (D.D.C. 1983) ..........................................................30

Skidmore v. Swift & Co., 323 U.S. 134 (1944) ..................................................................2

Small Refiner Lead Phase-Down Task Force v. EPA,
    705 F.2d 506 (D.C. Cir. 1983) ......................................................................31, 32

Spires v. Sunflower Elec. Coop., 280 F. Supp. 2d 1271 (D. Kan. 2003) ...........................1

United States v. 29 Cartons of...an article of food, 987 F.2d 33 (1st Cir. 1993) .........5, 26

United States v. 5 Cases More or Less Containing "Figlia Mia Brand",
    179 F.2d 519 (2d Cir. 1950.........................................................................6

United States v. 71/55 Gallon Drums of Stuffed Green Olives,
    790 F. Supp. 1379 (N.D. Ill. 1992) ...............................................................6

United States v. Anderson Seafoods, Inc., 447 F.Supp. 1151 (N.D.Fl. 1978) .......6, 16, 20

United States v. Labonte, 520 U.S. 751  (1997) ..................................................................3

United.States v. Lexington Mill Co., 232 U.S. 399 (1914) ...............................................20

United States v. Mead Corp., 533 U.S. 218 (2001) ............................................................2

United States v. Tins of Strawberries, 175 F.Supp. 694 (D.Ark. 1959) ............................6

United States v. Two Plastic Drums [Traco Laboratories], 984 F.2d 914
    (7th Cir. 1993) ...........................................................................................26

United States v. Haggar Apparel Co., 526 U.S. 380 (1999) ..............................................2

United States v. Menasche, 348 U.S. 528 (1955) ...............................................................2

United States v. Tsosie, 376 F.3d. 1210, 1217 (10th Cir. 2004) ........................................4

United Steel Workers v. Marshall, 647 F.2d 1189 (D.C. Cir. 1980) ................................30

Vaughn v. Rosen, 523 F.2d 1136 (1975) ............................................................5

Vigil v. Andrus, 667 F.2d 931 (10th Cir. 1982) ....................................29, 33


## DOCKETED CASES

NVE Inc. v. Department of Health and Human Services, No. 04-CV-999 (JAP),
  slip op. (D.N.J. Aug 4, 2004) ..............................................................2

Sierra Club v. Whitman, 32 ELR 20538, 2002 U S Dist. LEXIS 4120
  (D.C. Cir. 2002) ...................................................................................30


## FEDERAL REGULATIONS

21 C.F.R. § 10.40(b)(viii) ..............................................................................30

21 C.F.R. § 895.21 (a)(1) ...............................................................................21

46 Fed. Reg. 23266 (April 24, 1981) ..............................................................17

56 Fed. Reg. 65873 (December 19, 1991) .......................................................17

62 Fed. Reg. 30678 (June 4, 1997) ......................................................xiii, xv, 30

62 Fed. Reg. 44247 (August 20, 1997) ...............................................xiii, 30, 31

68 Fed. Reg. 10417 (March 5, 2003) ...............................................xiii, xvi, 30, 31

69 Fed. Reg. 6788 (February 11, 2004) .................................................*passim*

69 Fed. Reg. 61148 (October 15, 2004) ..........................................................17


## FEDERAL STATUTES

5 U.S.C. § 553 ................................................................................*.passim*

5 U.S.C. §§ 601-612 (The Regulatory Flexability Act)...............................33-34

5 U.S.C. § 706 ...................................................................................*passim*

21 U.S.C. § 321(ff) .....................................................................................22, 26

21 U.S.C. § 331 ...............................................................................................13

21 U.S.C. § 333 ..................................................................................................13

21 U.S.C. § 334 ..................................................................................................13

21 U.S.C. § 342 ..................................................................................................13

21 U.S.C. § 342(f)........................................................................................ *passim*

    21 U.S.C. § 342(f)(1)(A)............................................................................ *passim*

    21 U.S.C. § 342(f)(1)(D)..................................................................................11

21 U.S.C. § 343..................................................................................................13

21 U.S.C. § 350b..........................................................................................21, 22

21 U.S.C. §355(b) ..............................................................................................21

21 U.S.C. § 360c ................................................................................................21

21 U.S.C. § 360f ................................................................................................21

21 U.S.C. § 516(a)(1)..........................................................................................21

Chapter IV of FDCA for Foods 21 U.S.C. §§341 -350b ...................................21

USCS Fed. Rule Civ. Proc. 41 .......................................................................... 34

## MISCELLANEOUS

Executive Order 12866 .................................................................................33, 34

SEN. REP. NO. 103-410 .............................................................................. *passim*

GAO, "Dietary Supplements: Uncertainties in Analyses Underlying FDA's
Proposed Rule on Ephedrine Alkaloids" at 11 (July, 1999)
(GAO/HEHS/GGD-99-90) ........................................................ xiv, xv, xxvii, 14

GAO Report "Dietary Supplements, Review of Health-Related Call Records
for Users of Metabolife 356" (March 2003) .................................................. xxvii

A Blackletter Statement of Federal Administrative Law,
    54 ADMIN. L. REV. 17, 39 (2002) .........................................................................2

"FDA Announces Ban on Ephedra Supplements: Federal Move Follows Bans by
California, Illinois and New York," *HerbalGram*. 2004;61:64-55,63, American
Botanical Council.................................................................................................29

Altug, T., "Introduction to Toxicology and Food," Boca Raton, CRC Press (2003) ........19

Glantz SA.  Primer of Biostatistics, Fifth Edition.  McGraw-Hill, NY, 2002 .....................9

Hathcock, J. (eds.) "Intakes of essential nutrients form a continuum from
lethally deficient to lethally excessive" in Nutritional Toxicology Vol.1,
Academic Press, Inc. (1982) .............................................................................19

Lewington S, Clarke R, Qizilbash N, Peto R, Collins R, Prospective Studies
Collaboration.  Age-specific relevance of usual blood pressure to vascular mortality:
A meta-analysis of individual data for one million adults in 61 prospective studies.
*Lancet* 2002; 360:1903-1913 ........................................................................... xxi

Neaton JD, Kuller L, Stamler J, Wentworth DN.  Impact of systolic and diastolic
blood pressure on cardiovascular mortality.  In:  Laragh JH, Brenner BM, eds.
*Hypertension:  Pathophysiology, Diagnosis, and Management, Second Edition.*
Raven Press, NY, 1995, Chapter 9, pp. 127-144 ........................................... xxiv

Shibamoto, T. et al., "Introduction to Food Toxicology," Academic Press, Inc., (1993) .19

Snedecor GW, Cochran WG.  Statistical Methods, Sixth Edition.  Iowa State
University Press, Ames, Iowa, 1967 .....................................................................9

Steel RGD, Torrie JH.  Principles and Procedures of Statistics.
McGraw-Hill, NY, 1960.........................................................................................9

Vasan RS, Larson MG, Leip EP, Evans JC, O'Donnell CJ, Kannel WB, Levy D.
Impact of high-normal blood pressure on the risk of cardiovascular disease.
*New England Journal of Medicine* 2001;345:1291-1297............................... xxi

Vasan RS, Massaro JM, Wilson PWF, Seshadri S, Wolf PA, Levy D, D-Agostino
RB.  Antecedent blood pressure and risk of cardiovascular disease.
The Framingham Heart Study. *Circulation* 2002;105:48-53 ........................ xxii

Webster's New Universal Unabridged Dictionary (Barnes & Noble, Inc.; 1996) .............4

Blacks Law Dictionary, 6th Ed. (1990) .............................................................................5

FDA Warning Letter dated August 29, 2002, Docket No. W/L 42-02,
(http://www.fda.gov/foi/warning_letters/g3490d.htm)......................................13

FDA Letter "Selenium and Certain Cancers (Qualified Health Claim: Final Decision Letter)" Docket No. 02P-0457 (April 28, 2003 Office of Nutrition Products, Labeling, and Dietary Supplements)(http://www.cfsan.fda.gov/~dms/ds-ltr35.html) (last visited 12/13/2004) ................................................................................................20

"The Obesity Crisis in America," Statement of Richard H. Carmona, M.D., M.P.H., F.A.C.S., Surgeon General, U.S. Public Health Service, Testimony Before the Subcommittee on Education Before, U.S. House of Representatives (www.surgeongeneral.gov/news/testimony/obesity07162003.htm (last visited 12/10/2004)). ...............................................................................................24

Press Release, "President Bush Speaks to eDiets.com" (November 15, 2004) http://biz.yahoo.com/iw/041115/075970.html (last visited 12/10/2004)...........................24

FDA's Briefing Materials for Food Products Containing Ephedrine Alkaloids at 5 (October 11-12, 1995); 95N-0304, Vol 39, Ref. 1 (Ref. 30 to 62 Fed. Reg. 30678, "Dietary Supplements Containing Ephedrine Alkaloids, Proposed Rule")............... xiii, 26

"Remarks by Lester M. Crawford, DVM, Ph.D., Acting Commissioner of the FDA for Public Affairs Workshop" (April 19, 2004) at http://www.fda.gov/oc/speeches/2004/aspet0419.html (last visited 12/10/2004) .................................................................................. 28-29, 32

FDA/CFSAN "Regulatory Strategy for the Further Implementation and Enforcement of the Dietary Supplement Health and Education Act of 1994," (November 2004)(http://www.cfsan.fda.gov/~dms/ds3strat.html)(last visited 12/17/2004)...............29

## I.   SUMMARY

In the Final Rule, 69 Fed. Reg. 6788 (February 11, 2004)(hereinafter "Final Rule"), the

Defendants failed to satisfy their statutory burden of proof under 21 USC § 342(f) (and thereby

violated the statute) when they banned every dose level of ephedrine alkaloid-containing dietary

supplements ("EDS").  They also violated the Administrative Procedure Act ("APA")

prohibition on arbitrary and capricious agency action and on adoption of a substantive rule

without advance notice and opportunity for comment.  5 U.S.C. §§ 553 and 706.

*Violation of 21 U.S.C. § 342(f).*  The Defendants failed to meet their statutory burden of

proof under 21 USC § 342(f): (1) by refusing to give meaning to the essential terms "conditions

of use . . . suggested or recommended in the labeling . . ." and "significant" in the dietary

supplement adulteration provision; (2) by failing to establish, by a preponderance of the

evidence, a significant or unreasonable risk of illness or injury under *every* condition of use

(including dietary supplements containing daily ephedrine alkaloid dose levels of 10mgs or less

(hereinafter "Low Dose EDS")) before banning *all* ephedrine alkaloid containing dietary

supplements outright; (3) by adopting a "risk/benefit" balancing test that is not a permissible

construction of the dietary supplement adulteration provision; and (4) by flouting the will of

Congress, which clearly intended that the dietary supplement adulteration provision be read in

harmony with the food adulteration provision.

*Violation of the APA Prohibition on Arbitrary and Capricious Agency Action.*  The

Defendants also violated the APA's prohibition on arbitrary and capricious agency action (5

U.S.C. § 706): (1) by failing to articulate a standard or distinguishing principle in the Final Rule

that can enable the regulated class to discern whether any dietary ingredient will not be deemed

adulterated, and thus will be lawful for sale, in light of the FDA's failure to define

comprehensibly the meaning of "unreasonable risk," of "benefit," and of the nature, degree,

quality and quantity of "benefit" required to counterbalance any perceived "unreasonable risk;"

(2) by holding <u>all</u> ephedrine alkaloids to present an unreasonable risk of illness or injury without

<u>any</u> dose dependent analysis and, in particular, without scientific proof of illness or injury at the

level of 10 mgs or less of ephedrine alkaloids per day; and (3) by causing herbal ephedra when

sold in a tea at ephedrine alkaloid per serving levels ranging from 15 mgs to 30 mgs[1] to remain

legally saleable while banning outright the very same substance when encapsulated and sold as a

dietary supplement *even when the ephedrine alkaloid dose levels in the supplement are*

*substantially less than those in a serving of the tea.* See page 26 *infra.*

   *Violation of the APA Prohibition on Adoption of a Substantive Rule Without Federal*

*Register Publication Giving Notice and Opportunity for Comment.* The Defendants argue that

they have not violated the APA requirement of Federal Register publication (5 U.S.C. § 553) --

requiring notice and opportunity for comment -- when they adopted an entirely new standard for

evaluation of dietary supplement adulteration (the "Risk/Benefit Test") in the Final Rule. They

argue that public notice that they were considering holding ephedra adulterated under the dietary

supplement adulteration provision was enough. The Defendants are wrong. The Risk/Benefit

Test was not a secondary or tertiary finding flowing from a principle clearly articulated in the

Federal Register invitation for comments. No, the risk/benefit test is *the central defining*

*principle* of the Final Rule. Only decision-makers within the FDA could have anticipated that

FDA would adopt a new test for defining dietary supplement adulteration – one that would

weigh "unreasonable risk" against "benefit" and find adulteration if the perceived weight of the

---

[1] FDA's Briefing Materials for Food Products Containing Ephedrine Alkaloids at 5 (October 11-12, 1995); 95N-0304, Vol 39, Ref. 1 (Ref. 30 to 62 Fed. Reg. 30678, "Dietary Supplements Containing Ephedrine Alkaloids, Proposed Rule")(hereinafter "Briefing Materials for Proposed Rule").

benefit was not deemed sufficient to counterbalance the perceived risk.  No opportunity for

comment on the test was afforded to the regulated class before its adoption.[2]  The Final Rule is

wholly meaningless without the test.  Accordingly, the Defendants violated the APA's advance

notice and opportunity for comment requirements.

As explained in detail below, in light of the Defendants' violation of 21 U.S.C. § 342(f)

and the Administrative Procedure Act, 5 U.S.C. §§ 706 and 553, the Final Rule should be

declared invalid, the matter should be remanded to FDA for further rulemaking consistent with

the Court's opinion, and the FDA should be enjoined from taking any action to prevent the

Defendants from marketing a dietary supplement containing a daily ephedrine alkaloid dose of

10 mgs or less.

---

[2] In the 1997 and 2003 proposed rules (62 Fed. Reg. 30678 (modified by 62 Fed. Reg. 44247) and 68 Fed. Reg. 10417), the FDA focused on establishing a dose-dependent limit on ephedrine dietary supplements, not on banning them outright.  That dose dependent analysis helped lull the regulated class into expecting the Final Rule to follow the same method of analysis focusing, as the statute does, on "conditions of use…suggested or recommended in the labeling…"  Instead, FDA adopted an entirely new test, the Risk/Benefit Test.

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.